IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:14-CV-81-FL

| | | |
|---|---|---|
| KATHY L. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Kathy L. Taylor ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 14, 17). Both filed memoranda in support of their respective motions (D.E. 15, 18). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 1st unnumbered D.E. dated 25 Sept. 2014). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

I.      **BACKGROUND**

A.      **Case History**

Plaintiff filed an application for DIB on 24 June 2011 alleging the onset of disability on 12 May 2011. Transcript of Proceedings ("Tr.") 15. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 15. On 21 December 2012, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff, who was

represented by counsel; a friend of plaintiff; and a vocational expert testified. Tr. 29-51. The ALJ issued a decision denying plaintiff's claim on 8 January 2013. Tr. 15-25. Plaintiff timely requested review by the Appeals Council. Tr. 7. The Appeals Council allowed additional evidence (Tr. 453-63), but denied the request on 15 April 2014. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 8 May 2014, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

## C.     Findings of the ALJ

Plaintiff was 47 years old on the alleged onset date of disability and 50 years old on the date of the hearing.  *See* Tr. 23 ¶ 7.  The ALJ found that she had at least a high school education (Tr. 23 ¶ 8), and she testified that she had a college degree and teaching certificate (Tr. 35).  Her past relevant work included employment as an elementary teacher.  Tr. 23 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  Tr. 17 ¶ 2.  At step two, the ALJ found that plaintiff had the following medically determinable impairment that was severe within the meaning of the Regulations:  multiple sclerosis, cognitive disorder, and depression.  Tr. 17 ¶ 3.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings.  Tr. 17 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of work at the light exertional level.[1]  Tr. 19 ¶ 5; *see* 20 C.F.R. § 404.1567(b).  The limitations the ALJ imposed were the following:

> The claimant should not be exposed to extreme heat, vibration or work around heights or dangerous machinery due to her multiple sclerosis.  Because of her

---

[1] Title 20, C.F.R. § 404.1567(b) defines "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); *see also Dictionary of Occupational Titles* ("DOT"), app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http:// www.oalj.dol.gov/libdot htm (last visited 16 June 2015).  "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT.  *See* 20 C.F.R. § 404.1567.

cognitive limitations, she can only perform simple, repetitive, routine tasks, meaning that she can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. She can work in a non-production oriented work setting, involving no complex decision making, constant change, or dealing with changes or crisis situations.

Tr. 19 ¶ 5.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 23 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert at the hearing and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of marker, office helper, and photocopy machine operator. Tr. 24 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 21 ¶ 11.

### D.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1–2.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II.    OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff argues that the ALJ's decision should be reversed and benefits awarded or the case remanded for a new hearing on the principal grounds that the ALJ erroneously: (1) failed to find that she met or medically equaled Listings 11.09, 12.02, and 12.06; (2) found that she had the RFC to perform light work; (3) failed to give controlling weight to certain medical source opinions; and (4) failed to consider the determination by the Disability Income Plan of North Carolina ("DIPNC"), which apparently covered plaintiff through her employment as a teacher, that she is entitled to long-term disability benefits.  Because the final ground is dispositive of this appeal, the court will limit its discussion to that ground.

## III.    ALJ'S FAILURE TO CONSIDER RETIREMENT SYSTEM'S LONG-TERM DISABILITY DETERMINATION

On 19 June 2012, the Medical Board of the DIPNC approved plaintiff for long-term disability benefits, effective 10 July 2012.  Tr. 222.  The ALJ did not mention the disability determination or cite to the exhibit (Exhibit 8E) containing it.  Nor did the ALJ mention or cite to any of the application forms and other documents relating directly to the award of DIPNC long-term disability benefits to plaintiff.  *See* Tr. 210-21, 423-25.

The ALJ's failure to address the DIPNC long-term disability determination was error.

While the Social Security regulations provide that decisions by other governmental agencies regarding a person's disability are not binding on the Commissioner, 20 C.F.R. § 404.1504, under Social Security Ruling 06–03p ("SSR 06–03p"), the Commissioner is "required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies."  SSR 06–03p, 2006 WL 2329939 at *6.  Accordingly, "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." *Id.*
        . . . .
This court has repeatedly held that where an ALJ fails to mention disability determinations by other governmental agencies, this constitutes error necessitating remand to the Commissioner for further consideration and

explanation. *See Suggs v. Astrue*, 4:11–CV–128–FL, 2013 WL 466406 (E.D.N.C. Feb. 7, 2013)[;] *Alexander v. Astrue*, 5:09–CV–432–FL, 2010 WL 4668312 (E.D.N.C. Nov. 5, 2010); *Walton v. Astrue*, 7:09–CV–12–D, 2010 WL 2772498 (E.D.N.C. July 9, 2010); *Watson v. Astrue*, 5:08–CV–553–FL, 2009 WL 2423967 (E.D.N.C. Aug. 6, 2009).

*Batchelor v. Colvin*, 962 F. Supp. 2d 864, 867-68 (E.D.N.C. 2013) (ordering remand).

The same result is mandated here. The failure of the ALJ to mention the DIPNC determination leaves unclear what, if any, weight he gave to it, including the extent to which he recognized and took into account any differences in the standards governing the DIPNC determination and Social Security disability standards. The ambiguity is enhanced by the ALJ's repeated representations that he considered all the evidence of record. *See, e.g.*, Tr. 15 ("After careful consideration of all the evidence . . . ."); 17 ("After careful consideration of the entire record . . . ."); 19 ¶ 5 (same). Moreover, at the hearing, plaintiff testified that she received disability income and the ALJ sought and obtained confirmation from her that it was "[f]rom the state of North Carolina for being a teacher." Tr. 35. These circumstances clearly suggest that the ALJ did not simply ignore the determination, but did, in fact, consider it, though keeping to himself his evaluation of it. The court could speculate as to the ALJ's analysis of the DIPNC determination, but that is not its role. *See Pushkal v. Colvin*, No. 5:12–CV–223–FL, 2013 WL 4828560, at *7 (E.D.N.C.) ("[I]t is not the court's role to speculate about . . . what the [ALJ's] intended but unexpressed meaning might be."), *mem. & recomm. adopted by* 2013 WL 4828560, at *7 (10 Sept. 2013). Without an adequate explanation of the ALJ's assessment of the DIPNC determination, the court cannot conduct a meaningful review of the ALJ's decision. *See DeLoatche*, 715 F.2d at 150; *Baughman v. Colvin*, No. 5:13–CV–143–FL, 2014 WL 3345030, at *8 (E.D.N.C.) (ruling that the ALJ failed to "'provide sufficient articulation for his reasons for [dismissing the Medicaid decision] so to allow for a meaningful review by the courts'") (quoting

*Taylor v. Astrue*, No. 7:10–CV–149–FL, 2011 WL 2669290, at *5 (E.D.N.C. 7 July 2011)), *mem. & recomm. adopted by* 2014 WL 3345030, at *1 (8 July 2014); *see also Ward v. Colvin*, Civ. Act. No. 2:12-03654-RMG-BHH (D.E. 19 at 5-8) (D.S.C. 24 Jan. 2014) (recommending remand of DIB and SSI case where ALJ did not discuss the South Carolina Retirement System determination that plaintiff was disabled from his correctional officer position) (copy attached hereto), *rep. & recomm. adopted by* 2014 WL 545894, at *2-3 (10 Feb. 2014); *Kessler v. Astrue*, No. 1:08-cv-1126-SEB-DML, 2009 WL 3060220, at *4-5 (S.D. Ind. 22 Sept. 2009) (remanding Social Security disability case where "the ALJ's decision does not even acknowledge the V[eterans] A[dmininstration]'s determination, let alone cite the applicable VA disability guidelines or attempt to distinguish them and show why they are not relevant").

The fact that the DIPNC determination, signifying, at least in part, that plaintiff is disabled from working as a teacher, mirrors the ALJ's finding at step four, that she cannot perform her past work as a teacher, does not moot the ALJ's failure to discuss the DIPNC determination.[2] Neither 20 C.F.R. § 404.1504 nor SSR 06–03p makes the ALJ's obligation to consider and discuss another agency's determination of disability contingent on the other determination being in some respect contrary to the ALJ's decision. Even if the ultimate outcome by the other agency and the ALJ can appropriately be deemed equivalent, the question remains how the other determination figured into the ALJ's decision in light of, among other considerations, any differences in the applicable disability standards and whether such treatment of the other determination was proper. The court obviously cannot assess the propriety of the ALJ's analysis if the ALJ fails to disclose it, as here.

---

[2] *But see McMullen v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-14-2172, 2015 WL 1393525, at *2 (D. Md. 24 Mar. 2015) (rejecting contention that failure of ALJ to mention state disability retirement determination required remand as prejudicial to plaintiff where the ALJ found plaintiff incapable of doing her past relevant work and the court ruled that discussion of the determination at the hearing showed the ALJ considered it).

## IV.  CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 14) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 17) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.  In making this ruling, the court expresses no opinion on the weight that should be accorded the DIPNC disability determination or any other piece of evidence or the outcome of the case, matters that are for the Commissioner to resolve.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 30 June 2015 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.  Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This 16th day of June 2015.

James E. Gates
United States Magistrate Judge

# ATTACHMENT

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Jeffery R. Ward, | ) | Civil Action No.  2:12-03654-RMG-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting | ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Jeffery R. Ward, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 38 years old on his alleged disability onset date of June 25, 2005. (R. at 12, 19.) He alleged disability due to a panic disorder, a bipolar disorder, a vision disorder, headaches, and Asperger's syndrome. (R. at 15.) The plaintiff graduated from high school and has past relevant work as a corrections officer. (R. at 19, 38-39.)

The plaintiff protectively filed an application for DIB and SSI on May 27, 2010. (R. at 12.) His applications were denied initially and on reconsideration. (R. at 12.) After a hearing before an Administrative Law Judge (ALJ) on June 20, 2011, the ALJ issued a decision on July 1, 2011, in which the ALJ found that the plaintiff was not disabled. (R. at 12-21.) The

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Appeals Council denied the plaintiff's request for review (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

> (2)    The claimant has not engaged in substantial gainful activity since January 11, 2006 (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

> (3)    The claimant has the following severe impairments: a panic disorder with agoraphobia and a bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to the performance of simple, routine, and repetitive tasks in work settings that do not require interactions with the general public or a large number of co-workers. The claimant should avoid even moderate exposure to hazards.

> (6)    As a result of his residual functional capacity as described above, the claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

> (7)    The claimant was born on January 6, 1967 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

> (8)    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> (9)    Transferability of job skills is not material to the determination of disability because using the Medical-

2

Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from June 25, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling (SSR) 82–61, 1975-1982 Soc. Sec. Rep. Serv.

3

836 (West 1983).  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 1382c(a)(3)(H)(I).  He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* U.S.C. § 405(g)*; Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial

4

evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to consider his vision disorder and (2) failing to consider a State Disability Retirement Decision.

The Court will address the errors in reverse order.

**I.    State Disability Retirement Decision**

This case should be remanded for consideration of the plaintiff's State Disability Retirement Decision, issued September 8, 2005, in which the plaintiff was found disabled from his Correctional Officer II position. (R. at 316-18.) The determination came with a narrative explanation and rationale and was based on the medical evaluations of Drs. P. Sukin and Kenneth Harwood. (R. at 318.) The ALJ did not discuss it.

Although not bound by state agency decisions or assessments, *see* 20 C.F.R. § 404.1504, the ALJ must articulate reasons for his rejection of another agency's decision. *See Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). This articulation is necessary to permit "reasoned review by the courts." *Id.*

The defendant contends that the failure to discuss the State benefits' determination is harmless for various reasons. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). First, the State disability benefits were revoked in 2008. (R. at 36-37, 52-53.) Second, the disability standard for the State retirement decision is different. Namely, that determination is based solely on whether the plaintiff could perform his Correctional Officer position (see R. at 318) and not whether he could perform any available work in the national economy, as required by Social Security regulations. Lastly, the State determination relied heavily on Dr.

5

Harwood's opinion, which the defendant contends the plaintiff, himself, denied at the administrative hearing.  (R. at 50.)

Working backwards, the Court disagrees that the plaintiff rejected Dr. Harwood's opinion or claimed that there was some fundamental confusion about whether Dr. Harwood's records were about him.  (R. at 50.)  The defendant has extrapolated the plaintiff's rejection of a particular observation in the State determination about aliens (R. at 318) too far.  If the defendant has evidence that the State determination relied on records of Dr. Harwood's that do not apply to the plaintiff, she may share them.  This hearing exchange is not sufficient.

As to the relative standards of review as between the State determination and the SSA's, the Court readily concedes the material difference.  That is one reason why such determinations are not binding.  That distinction, however, does not mean that observations about the plaintiff, contained in such a determination, are not probative evidence.  Indeed, as discussed, courts agree that they are, notwithstanding differing standards. *See Morrison*, 146 F.3d at 628; *Gaskins v. Colvin*, 2013 WL 3148717, at *39-40 (N.D.W. Va., June 19, 2013 (finding error for failure to consider a state disability determination); *Worthington v. Astrue*, 2012 WL 4026067, at *4 (E.D.N.C. 2012) (finding error for failure to consider a state disability determination).

Relatedly, the defendant suggests that the State determination does not recommend limitations more than what was already recognized by the ALJ in his Residual Functional Capacity (RFC) assessment.  Indeed, the ALJ included a limitation to simple, routine, and repetitive tasks in work settings that do not require interactions with the general public or a large number of co-workers, very similar to the conclusion of the State determination. (Compare R. at 16 with R. at 318.)

But, the plaintiff argues that the State determination also noted marked impairment from borderline personality disorder, with explosiveness and suspiciousness.  (R. at 318.)

6

The plaintiff contends that folding consideration of such attributes into a fullsome RFC analysis might alter the ALJ's view as to both the plaintiff's ability to perform simple tasks and, most of all, respond appropriately to supervisors.   It is a narrow, if not conceivable, possibility.

Concerning the revocation of the State benefits, the defendant argues that the plaintiff himself has admitted that the benefits were discontinued because Dr. Surkin, the supervising physician, told the State examiners that he was not truly disabled.   A review of the plaintiff's testimony does not support this representation.  (R. at 36-37, 52-53.)  Instead, the plaintiff testified that he would not continue with the prescribed medication and that as a result Dr. Surkin "could not update [his] police officer's retirement . . . ." (R. at 53.)  The plaintiff, therefore, testified to a kind of procedural default in his benefits unrelated to the merits of whether or not he was still truly disabled, as the defendant would urge.  In other words, he seems to suggest that Dr. Surkin simply could not complete the paperwork.  Truthfully, the record does not reflect why the benefits were revoked, which goes to the central problem.

The ALJ did not recognize or otherwise address the 2005 State disability determination at all.  The Court cannot guess whether he was persuaded by any of the reasons recited by the defendant now, including the subsequent 2008 revocation of benefits.  If the absence of any rationale for that revocation was some kind of obstacle to his consideration, the ALJ could have, of course, developed the record as to it.  *See Worthington*, 2012 WL 4026067, at *4 (finding that once the plaintiff testified about a state disability decision, which was not otherwise evidenced by the record, the ALJ had a duty to develop the record).  He did not.  All of these circumstances amount to an unreviewable condition of the issue, here.  *See Morrison*, 146 F.3d at 628.

The undersigned disfavors remand for consideration of a single page of rationale, which is largely consistent with the limitations already identified by the ALJ.  But, to the

7

Court, such is the risk run by the agency for not making a moment's mention of such obviously relevant evidence, even where it was not necessarily bound by the same. It could be done briefly. But, where no mention whatsoever of the State determination is made and the plaintiff can point, as he has done here, to some plausible and additional observation or limitation not considered, the defendant has left herself open to such technical challenges. The Court feels constrained to recommend remand for consideration of the State determination and investigation into the 2008 investigation, as necessary.

## II.    Vision Disorder

The plaintiff also complains that the ALJ did not properly account for his vision disorder. Specifically, the plaintiff contends that the ALJ erred in failing to conclude that the plaintiff's optical impairment was *neither* severe *nor* non-severe.

The plaintiff testified that he had surgery on his eyes, which left scar tissue that makes him prone to infections – iritis. (R. at 39.) The plaintiff further testified that the lens of his right eye had been removed. *Id.* This condition is called aphakia. *Id.* Doctors at the Storm Eye Institute at the Medical University of South Carolina confirmed that the plaintiff had congenital cataracts, aphakia in the right eye, and suffers from chronic iritis. (R. at 454.) The plaintiff does not contend that his blurred vision, recurring eye infections, and eye pain are constant or continuous symptoms. But, the plaintiff submits that his eye conditions still place certain physical limitations on his ability to sustain physical work. Specifically, the plaintiff argues that he is limited in the length of time he can be exposed to the sun or bright lights. The plaintiff also submits that his chronic eye infections result in pain and discomfort that would cause him to be frequently absent from work at not able to sustain gainful employment. There does not appear to be any medical records supporting these specifically alleged limitations.

At the time the plaintiff was retired for disability by the South Carolina Retirement System, however, the medical expert's disability diagnosis included a diagnosis of iritis. (R.

8

at 424.) Dr. John Grady, an ophthalmologist, diagnosed the plaintiff with chronic uveitis and referred him to the Medical University of South Carolina. Doctors specializing in ophthalmology at the Storm Eye Institute at the Medical University of South Carolina diagnosed the plaintiff with chronic eye infections and found that the plaintiff has a complicated ocular history, which included multiple cataract surgeries and aphakia OU. (R. at 454.)

As an initial matter, the Court does not fully understand the plaintiff's meaning. The ALJ specifically stated that the plaintiff's vision is "not found to be severe," in other words *non-severe.* (R. at 15.) Unless the Court misunderstands the point, there is no error of the ALJ, at step two, in failing to find the impairment either severe or non-severe. He found it non-severe. The plaintiff does not seem to argue that it should be considered severe, as the defendant presupposes, but simply that it was somehow uncharacterized.

To the extent the plaintiff argues that the vision disorder, after being characterized as non-severe, was not further considered in combination with the plaintiff's other impairments, the Court has some more sympathy.

When a claimant suffers from multiple impairments, the ALJ must consider their combined effect in determining whether the claimant is disabled. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Hicks v. Gardner*, 393 F.2d 299, 301 (4th Cir. 1968). Congress has explicitly required that "the combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(c); see also Hines v. Bowen, 872 F.2d 56, 59 (4th Cir.1989). As an important "corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50.

In *Walker,* the Fourth Circuit remanded the plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the claimant's impairments. See id. at 49-50. The ALJ found that the claimant suffered from several

9

ailments and noted the effect or non-effect of each impairment separately.  *See id.* The ALJ summarily concluded that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4." *Walke*r, 889 F.2d at 49. The Fourth Circuit rejected this conclusion as inadequate because the ALJ neither analyzed nor explained his evaluation of the cumulative effect of the claimant's impairments. *See Id.* at 49-50.

The ALJ, here, did discuss evidence related to the plaintiff's vision disorder, as required.  (R. at 15.)  The plaintiff admits as much.   The ALJ found that the plaintiff was diagnosed with chronic uveitis but that the plaintiff's eye condition was treated successfully with medication. (R. at 15.)  But, the ALJ did not make any mention of evidence related to the plaintiff's vision after these step two severity comments.

This Court has been liberal in viewing the mechanical way in which the ALJ discusses the evidence, affirming that impairments can be considered in combination even where they are discussed physically separate in the decision.  But, here, the ALJ has only affirmed, in typical boilerplate tones, that he considered all symptoms, as well as "the entire record." (R. at 16.)  The Court, however, believes that *Walker* requires some more specific reference or consideration of alleged impairments, severe and non-severe.  In other words, evidence that non-severe limitations, like the vision order, were still a part of the matrix of considerations at step four.

It is not a fantastic error.  But, it is not clear whether the ALJ considered the effects of this non-severe impairment.

### CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence.  It is, therefore ,RECOMMENDED, for the foregoing reason, that the Commissioner's decision be reversed and remanded to the

10

Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

January 24, 2014
Charleston, South Carolina

11